BROWN, Chief Judge.
_JjIn this medical malpractice case, the defendants are Dr. Larrie Williamson and her medical malpractice insurer, Louisiana Medical Mutual Insurance Company (“LAMMICO”). Plaintiff, David Elledge, was seriously injured when he attempted suicide while confined in an enhanced unit and under the care of Dr. Williamson, a practicing psychiatrist. As required by law, the complaint was first heard by a Medical Review Panel (“MRP”) which concluded that Dr. Williamson did not violate the appropriate standard of care. Thereafter, David and Kathy Elledge filed this action.[1] Defendants filed a motion for summary judgment (“MSJ”) asserting that plaintiffs had no expert witness to support their claim. In response, plaintiffs filed a motion to vacate medical review panel opinion and an opposition stating that the MSJ was premature. Plaintiffs claim that the MRP was not properly established pursuant to the Louisiana Medical Malpractice Act, which clearly requires advance written notice of a panelist’s employment, financial or other relationship with either party that might give rise to a conflict of interest. Plaintiffs claim that a new panel must be appointed and without a valid MRP opinion, this lawsuit is premature. The trial court denied plaintiffs’ motion to vacate and granted defendants’ motion for summary judgment. Plaintiffs have appealed. We affirm in part, reverse in part, and remand.

_[¡Facts and Procedural Background

In April 2007, plaintiff, David Elledge, who was 59 years old and employed by the U.S. Postmaster in Monroe, Louisiana, began experiencing depression, suicidal thoughts, and paranoia due to a lack of sleep. On July 23, 2007, Elledge was voluntarily admitted as a psychiatric patient into Brentwood Behavioral Hospital (“Brentwood”) in Shreveport, Louisiana. Defendant, Dr. Williamson, the treating physician, placed Elledge in the “Enhanced Unit” and ordered that he be provided with “one-on-one” care. The enhanced unit is a locked-down area on the third floor of Brentwood with an increased staff and only 12 patients. Dr. Williamson prescribed Geodon, a sedative, for sleep. On July 25, Dr. Williamson removed the “one-on-one” order but continued Elledge in the enhanced unit under close observation. The next day, July 26, following an “elopement” attempt, Dr. Williamson added precautions. In his petition, Elledge *435 claimed that he “specifically told Dr. Williamson that he was trying to kill himself.” Later that day, while in the third floor enhanced unit, Elledge jumped out of a window. He suffered serious and permanent injuries.
Plaintiffs filed a timely complaint with the Division of Administration, which was subsequently reviewed by a medical review panel consisting of three physicians and an attorney/chairman. The panel unanimously concluded that Dr. Williamson met the standard of care for safeguarding the patient from the danger of his mental state, including the duty to use reasonable care to prevent self-inflicted harm.
Following the panel’s opinion, plaintiffs filed a medical malpractice suit against Dr. Williamson and LAMMICO. Plaintiffs claimed that | SEHedge’s injuries were caused by Dr. Williamson’s negligence in failing to recognize and treat his suicidal thoughts; failing to administer medication that would sedate him and allow him to sleep; failing to recognize the seriousness of his suicidal tendencies; failing to diagnose and treat his depression timely and appropriately; failing to protect him from himself while in her care, custody, and control; and by recalling the “one-on-one” order despite knowing that plaintiff was still suicidal.
Defendants filed a motion for summary judgment, asserting that plaintiffs had failed to identify an expert witness and therefore would be unable to meet their burden of proof at trial. The hearing on the motion for summary judgment was continued at the request of plaintiffs. Plaintiffs filed an opposition to defendant’s motion for summary judgment, alleging that defendant’s motion was premature. Plaintiffs also filed a motion to vacate the opinion of the MRP. After additional depositions and discovery, plaintiffs filed a supplemental memorandum in support of their motion to vacate.
The trial court denied plaintiffs’ motion to vacate and granted defendants’ motion for summary judgment. The Elledges filed the instant appeal.

Discussion

Motion to Vacate the MRP

Under the Louisiana Medical Malpractice Act, before a civil action can be filed against a qualified healthcare provider or its insurer, the claim must first be submitted to a medical review panel. La. R.S. 40:1299.47. A civil action filed without having obtained an opinion from the medical Preview panel is subject to an exception of prematurity. In the case sub judice, plaintiffs filed an exception of prematurity claiming that the Medical Review Panel (“MRP”) was improperly convened and that its opinion should be vacated.
An MRP is composed of four members: three health care providers and one attorney. The parties may select the attorney member by agreement or, if they cannot agree, by using the strike procedure set forth in the statute. The attorney member’s role is purely advisory; he or she does not vote. The health care providers must be licensed in Louisiana and currently engaged in the practice of their professions. The claimant and the defendant each select one panelist. The first two panelists then select a third panel member. As in the instant case, when the only defendant is a specialist, then the three physician members of the panel must be from the defendant’s specialty, which in this case is psychiatry. La. R.S. 40:1299.47(0).
Each panelist expresses his or her expert opinion regarding whether the information presented supports the determination that the defendant physician breached the appropriate standard of care. La. R.S. 40:1299.47(G). The medical re *436 view panel’s opinion is admissible as evidence in a medical malpractice action. Hunter v. Bossier Medical Center, 31-026 (La.App.2d Cir.09/25/98), 718 So.2d 636.
Plaintiffs’ motion to vacate was based upon two separate issues. First, the plaintiff claims that two panel members failed to submit a writing to the panel chairman disclosing each of their relationships with the defendant that potentially served as conflicts of interest. Secondly, the plaintiffs argue that |fione panelist, Dr. Stevens, failed to execute his oath prior to engaging in the duties of a panelist.
La. R.S. 40:1299.47(0(7) requires:
A panelist or the attorney chairman shall disclose in writing to the parties prior to the hearing any employment relationship or financial relationship with the claimant, the health care provider against whom a claim is asserted, or the attorneys representing the claimant or health care provider, or any other relationship that might give rise to a conflict of interest for the panelists. (Emphasis added).
Plaintiffs argue that the trial court abused its discretion by failing to vacate the medical review panel’s opinion because two panelists did not disclose their personal and/or employment relationships with Dr. Williamson. One panelist, Dr. Lee Stevens, taught Dr. Williamson during her residency at LSUS Medical Center. Additionally, Dr. Stevens and Dr. Williamson are both staff physicians at Brentwood Hospital and receive a stipend from the hospital for performing on-call duties. Dr. Stevens testified that the two occasionally consulted one another regarding patient care. During his deposition, Dr. Stevens referred to Dr. Williamson as a “good friend” but not a “close friend.”
Plaintiffs also object to a second panelist, Dr. Beth Valiulis, based upon the panelist’s failure to disclose her acquaintance with Dr. Williamson which began during their residency. Plaintiffs cite Dr. Valiulis’ uncooperative nature during her deposition, and her lack of knowledge regarding the procedures governing the conduct of medical review panels as evidence of bias. In her deposition, Dr. Valiulis testified that she began her presidency two or three years after Dr. Williamson and recalled having minimal contact with Dr. Williamson.
The third panelist was Dr. Gregory Seal, who was not challenged by either party. What is problematic is that the record does not show who selected the members of the panel. The selection by Dr. Williamson of either Dr. Stevens or Dr. Valiul-is could be a factor to weigh and could have some relevance to an evaluation of impartiality. This is heightened by the fact that Dr. Valiulis evaded answering a simple question concerning whether she informed the attorney/chairman or the other members of the panel of a relationship with defendant.
In support of their contention, the plaintiffs cite Houghton v. Our Lady of the Lake Hosp., Inc., 03-0135 (La.App.lst Cir.07/16/03), 859 So.2d 103. In Houghton, supra, the trial court vacated an MRP’s opinion on the basis that a panelist failed to inform the parties of her prior employment with the defendant hospital. The First Circuit court upheld the decision, stating:
The panel was not established pursuant to the provisions of the Act, which clearly requires advance written notice to the parties of any employment relationship, financial relationship, or other relationship with either party that might give rise to a conflict of interest for a panelist. The timely filing of the motion in the ancillary matter brought this omission of notice of a possible conflict of *437 interest to the attention of the court, and the court, in its discretion, reluctantly granted the motion to vacate the opinion of the medical review panel and ordered the parties to reappoint a medical review panel. Therefore, based on the ruling of the court in the ancillary matter, the complaint had not been reviewed by a properly constituted panel and for that reason, the malpractice suit was premature. (Emphasis added). Houghton, 859 So.2d at 109.
The statute requires only those panel members who possess a potential conflict of interest to provide a written disclosure. The court has expounded |7upon what it deems a conflict of interest in the context of an employment relationship. In Derouen v. Kolb, 397 So.2d 791, 794-5 (La.1981), the Louisiana Supreme Court held that there was no potential bias toward a plaintiff even though two physician members of the medical review panel were staff members at defendant hospital.
Furthermore, the Fourth Circuit has addressed employment relationships in the context of medical residency programs in Moore v. Wal-Mart, Inc., 98-1806 (La.App.4th Cir.03/10/99), 729 So.2d 187. The court in Moore, supra, held that no conflict of interest existed between a panelist physician and the defendant physician despite the fact that the panelist supervised the defendant during his residency and were casual acquaintances.
In Whitt v. McBride, 94-896 (La.App.3d Cir.03/01/95), 651 So.2d 427, writ denied, 95-0357 (La.03/30/95), 651 So.2d 851, the appellate court concluded that the trial court in a medical malpractice action was justified in finding that a physician selected by defendant physician did not have a conflict of interest even though that defendant had previously served on a panel that exonerated that physician.
In the instant case, after exploring the issue, the trial court determined that no such disqualifying conflict existed, and we find no abuse of its discretion in arriving at this conclusion. Thus, the failure to disclose what the two panelists ■ believed was not a conflict of interest is not error. Neither is the trial court’s adverse ruling on plaintiffs’ motion to vacate.
|sIn determining whether conflicts of interests exist, the courts have emphasized the fact that a MRP’s opinion is not conclusive. The supreme court in Derouen, supra at 794-95, stated:
Where a judge has the power to decide the facts and law of a case and to render a final adjudication as to the rights of the parties involved, no such power exists for the medical review panel. The panel simply renders an expert opinion, and does not have the power to adjudicate the rights of any party.
In all cases which go to trial the judge or jury remain the final arbiter of factual questions concerning liability and quantum.
Therefore, the existence of an employment, financial or other relationship giving rise to a conflict of interest does not require an automatic disqualification of the panelist’s service. The court has discretionary power in determining whether a panel member should be disqualified. Whitt, supra; Houghton, supra.
In Whitt, supra at 429, the court held: “We note that La. R.S. 40:1299.47(0(7) only mandates that these relationships be disclosed in writing to the parties. It does not specify automatic disqualification from service on the panel. Rather this determination is left to the discretion of the trial court.”
The trial court has vast discretion in finding whether a conflict of interest exists *438 that could be highly biased and prejudicially influence the medical review panel’s opinion. On this record we cannot find a violation of that discretion. The trial court reasoned that based upon the evidence presented, the relationships between the panelists and the defendant failed to show a level of conflict of interest that would violate La. R.S. 40:1299.47(0). Further, as we have stated, the failure to inform the parties of the relationship | ¡¡between Drs. Stevens and Valiulis with Dr. Williamson does not automatically require the MRP to be vacated.
Both of the panel members, Dr. Stevens and Dr. Valiulis, signed an oath stating that they would perform their duties impartially. Plaintiffs contend that Dr. Stevens signed his oath after the review of the complaint. Dr. Stevens was admitted onto the panel in substitution of another physician who had been released. The panel chair mailed the oath to Dr. Stevens to sign after the MRP’s meeting. Although La. R.S. 40:1299.47(0(5) requires that the oath be signed before the meeting, this oversight and technical error does not render the panel opinion inadmissible. Hunter, supra.

Motion for Summary Judgment

The second issue that this court must consider is whether plaintiffs are correct in their claim that the trial court erred by granting defendants’ motion for summary judgment. A motion for summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Schultz v. Guoth, 10-0343 (La.01/19/11), 57 So.3d 1002.
To successfully establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: 1) the standard of care applicable to the defendant; 2) that the defendant breached that standard of care; and 3) that the resulting injury was a proximate cause of the breach. La. R.S. 9:2794; Roberts v. Marx, 47-658 (La.App.2d Cir.01/16/13), 109 So.3d 462, writ denied, 13-0649 (La.04/26/13), 112 So.3d 847.
| inPlaintiff is generally required to produce expert testimony in a medical malpractice action to establish the applicable standard of care and to determine whether that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the counsel of expert testimony. Roberts, supra. There are instances in which expert testimony is not required in order for the plaintiff to sustain his burden under La. R.S. 9:2794. The exception exists in cases where the medical and factual issues are such that a lay person can perceive negligence in the physician’s conduct as well as any expert. Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228.
In the case sub judice, upon David Elledge’s admission to the hospital, Dr. Williamson diagnosed him with an Axis I major depressive disorder and suicidal ideation.
The MRP’s opinion states:
Dr. Williamson assessed him initially and placed him on one-to-one and moved him into the enhanced unit, the most secured unit in the hospital. The following day, based on her assessment, he was no longer suicidal and she changed him to continuous observation (he remained in the enhanced unit). The next day, after an elopement attempt, she put him additionally on elopement precautions and ordered at that time also unit restrictions all of which met the standard of care. Elopement occurs when a *439 patient leaves or attempts to leave the facility
without the knowledge of the staff. According to the MRP members, upon learning of the incident, Dr. Williamson kept Elledge in the enhanced unit from which he had already escaped. According to the petition, Elledge told Dr. Williamson that he tried to kill himself that day. From inside the third floor enhanced unit, Elledge jumped out of a window. An enhanced unit |nwith continuous observation would suggest that the room would not be equipped with any instruments or means by which a patient could attempt to commit suicide. The placement of a suicidal person on the third floor in a unit with unsecured and breakable windows would appear to be incongruous. Neither plaintiffs or defendants, however, presented any information concerning the security and preventive measures of the enhanced unit, particularly the windows. The medical review panel did not specifically address this question. Furthermore, Elledge was under continuous and close observation in this unit which only had 12 patients and had additional staff.
Clearly, Dr. Williamson was aware of Elledge’s propensity for self-damaging acts; he had a history of such conduct; he had attempted suicide that same morning when he temporarily escaped from the enhanced unit. As a psychiatrist, Dr. Williamson understood the precarious position her patient was in and had a professional responsibility to treat Elledge for the manifestations or symptoms of the disorder, namely, suicide or other self-harmful acts. This duty included heightened preventative measures to keep him from self-injury.
The factual question at issue in the instant case is what restraint or seclusion was appropriate and whether the care provided or ordered by Dr. Williamson met the appropriate standard. Any doubt as to these facts must be resolved in favor of a trial on the merits.
We find that the record raises a factual dispute at least with respect to the alleged negligence in housing Elledge in a third floor psychiatric ward |12with a window from which he could (and did) jump out of and incur debilitating injuries.
We reject defendants’ contention that the absence of expert testimony was fatal to the establishment of a prima facie case. A factfinder could find negligence under these circumstances without the assistance of expert testimony.
In the current posture of this case, the trier of fact could conclude that secured, unbreakable windows were the correct protocol and standard of care. The fact that Elledge jumped through an unsecured window on the third floor of the “secured area,” without any evidence from defendants that the windows were secured, is an issue of genuine material fact.

Conclusion

We AFFIRM the denial of the motion to vacate, REVERSE the grant of the motion for summary judgment, and REMAND. Costs are assessed to defendants.

. Plaintiffs divorced during the pendency of this lawsuit. Kathy filed a claim for loss of consortium.