WILLIAMS, J.
Lin this dental malpractice action, plaintiff, Gerald M. Bloxham, as substituted *1218 plaintiff for Laura 0. Bloxham (deceased),[1] appeals the trial court’s judgment in favor of defendants, Jeffrey V. Anzalone, D.D.S., L.L.C., Jeffrey Anzalone, D.D.S., individually, and medical malpractice insurer, Louisiana Medical Mutual Insurance Company (“LAMMICO”). For the following reasons, we affirm.
FACTS
Mrs. Bloxham had an external dental implant placed by Dr. Eric Geist, a periodontist, in 1986.[2] In 2005, she went to Dr. Geist complaining of episodes of soreness in her gums. Dr. Geist noted that Mrs. Bloxham had a “small area of inflammation with minimal drainage, ulcer like[.]” He irrigated the area, applied Negatan and instructed her to follow up with her family dentist, Dr. Robert Hufstutter.
Mrs. Bloxham continued to experience problems associated with inflammation as a result of food accumulating around the implant. Dr. Hufstutter referred her to defendant, Dr. Jeffrey Anzalone, with the following notation:
Jeff, Dr. Geist recently evaluated this old implant [and] deemed it stable [and] functional but she continues to have problems with the tissue around the left post[.] I’m hoping you can help recont-our this area.
On August 2, 2006, Dr. Anzalone evaluated Mrs. Bloxham and noted:
Patient was seen today for consultation concerning peri-implantitis. PA reveals bone loss# 22 implant with | ¡igingival irritation and 6mm probing depths. Recommended bone grafting and new reline. Pt to not wear denture for a minimum of 2 weeks. Risks and consents were discussed and accepted.
On August 4, 2006, Dr. Anzalone performed a debridement of the tissue around the implant. During the procedure, Dr. Anzalone made an incision and retracted the gum. According to Dr. Anzalone, once he retracted Mrs. Bloxham’s gum, he observed that the implant had become integrated into her jawbone and that she had incurred bone loss. Dr. Anzalone elected to insert a bone graft, during which he cut and extracted a portion of Mrs. Bloxham’s gum, exposed the jawbone and inserted bony material into the jawbone.
Mrs. Bloxham returned to Dr. Anzalone for her first post-operative visit on August 21, 2006. According to Dr. Anzalone’s records, she reported that she was experiencing “numbness from 3mm left of midline to mental foramen area.” She also reported that she was experiencing a “muscle twitch and some of the tingling has increased.” At the next visit, September 6, 2006, Mrs. Bloxham complained of “numbness and a burning sensation” in her lip and tongue. Dr. Anzalone ordered a Medrol dose pack and noted that he “reassured [Mrs. Blox-ham] that this was probably due to bruising and swelling around the nerve.” At subsequent visits, Mrs. Bloxham continued to complain of numbness and the burning sensation.[3]
Thereafter, Dr. Anzalone conferred with Dr. Geist and Dr. Roger Meyer, a micro-neurosurgeon in Atlanta, Georgia, with regard to Mrs. Bloxham’s symptoms. He then referred Mrs. Bloxham to Dr. Vipul Shelat, a | Jocal neurologist, for evaluation.
*1219 Approximately twelve weeks after the procedure, Mrs. Bloxham returned to Dr. Geist. She informed him that she had been experiencing numbness and “burning pain” since the procedure performed by Dr. Anzalone. Dr. Geist examined her and noted that the old implant was still secure. Ultimately, he referred her to Dr. John Zuniga, an oral and maxillofacial surgeon, in Dallas, Texas.
Dr. Zuniga examined Mrs. Bloxham in December 2006, approximately four months after Dr. Anzalone performed the debridement and bone grafting procedure. Dr. Zuniga noted that Mrs. Bloxham was complaining of numbness in her lips and numbness/burning in her tongue since her procedure. Initially, he elected to treat her with “conservative management.” However, since Mrs. Bloxham was unable to tolerate many of the medications prescribed, Dr. Zuniga decided to perform surgery. During the operation, he noted that Mrs. Bloxham’s mental nerve was encased or compressed by the old implant. Dr. Zuniga’s procedure failed to relieve Mrs. Bloxham’s pain and numbness.
Thereafter, Mrs. Bloxham was examined by various specialists and underwent extensive treatment, including additional surgeries, in an effort to correct the problem. Finally, Mrs. Bloxham elected to have her mental nerve transected (severed) to relieve her pain; the procedure was performed by Dr. Ghali Ghali, an oral maxillo-facial surgeon, on January 22, 2010. As a result, she had permanent numbness in the affected area.
Subsequently, plaintiff filed a medical malpractice complaint against Dr. Anza-lone with the Patient’s Compensation Fund; a medical review panel |4was convened. The panel unanimously concluded, “The placement of the bone graft in the area, due to the type of implant present, falls outside the standard of care for this case.” However, with regard to the issue of causation, the panel stated:
This panel is unable to determine from the information it was provided whether the procedure Dr. Anzalone performed caused the damages described in plaintiffs complaint. Dr. Zuniga’s records indicate that the compression of the nerve was from the implant. This panel does not have sufficient information to determine whether the procedure performed by Dr. Anzalone caused or contributed to that compression.
On August 26, 2009, plaintiff filed a medical malpractice action against Dr. Anza-lone, individually, his limited liability dental practice and LAMMICO, alleging that the impingement of her mental nerve and her subsequent ongoing symptoms were caused by “improper surgical techniques, improper implantation of a graft in the vicinity of a nerve location, lack of appropriate sedative administration, incomplete or inaccurate assessment of the nerve locations, and/or such other deficiencies in the surgical procedure as discovery may disclose.” Additionally, plaintiff invoked the doctrine of res ipsa loquitur “to transfer the burden of proof to [defendant] to demonstrate that his medical procedure not only did not, but could not have, caused the numbness and burning complained of by [plaintiff].” Plaintiff sought general and special damages, including costs of the medical review panel proceedings.
Subsequently, on September 24, 2012, plaintiff filed a pleading entitled “Motions in Limine Concerning (1) Use of the Doctrine of Res Ipsa Loquitur, (2) Use of the Housley Presumption of Causation, (3) Exclusion of 15the Defense of Informed Consent, (4) Exclusion of the Defense of Comparative Fault, and (5) Exclusion of the Testimony of Kristi Soileau, D.D.S.[,] Concerning Causation.” The motions were referred to the merits of the trial.
*1220 At the conclusion of the bench trial, the court found in favor of. defendants. Although the court did not address the issue of whether Dr. Anzalone breached the standard of care, it concluded that plaintiff failed to carry her burden of proving the bone graft caused or contributed to her injury. The court did not expressly rule on plaintiffs motions to apply the doctrine of res ipsa loquitur and the Housley presumption.
Plaintiff appeals.
DISCUSSION
Plaintiff contends the trial court erred in finding that his wife failed to meet her burden of proving that the installation of the bone graft caused her persistent pain and numbness in her tongue, lower lip and gum. Plaintiff argues that Mrs. Bloxham’s symptoms did not begin until after the procedure and witnesses testified that the symptoms could have been caused by the procedure. Plaintiff also argues that even Dr. Anzalone admitted that a number of things could have caused Mrs. Bloxham’s problems, including the insertion of the bone graft, the injection, the debridement, the closure and/or the settlement of the implant.
To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. LSA-R.S. 9:2794(A); Roberts v. Marx, 47,658 (La. App.2d Cir.1/16/13), 109 So.3d 462, writ denied, 2013-0649 (La.4/26/13), 112 So.3d 847.
The manifest error standard of review applies to our review of medical malpractice claims. Jackson v. Tulane Medical Center Hosp. and Clinic, 2005-1594 (La.10/17/06), 942 So.2d 509; Coody v. Barraza, 47,732 (La.App.2d Cir.3/6/13), 111 So.3d 485. A court of appeal may not set aside a trial court’s or jury’s finding of fact in the absence of manifest error or unless clearly wrong. Hays v. Christus Schumpert Northern Louisiana d/b/a Christus Schumpert Health Sys., 46,408 (La.App.2d Cir.9/21/11), 72 So.3d 955; Coody, supra. In order to reverse a fact finder’s determination, an appellate court must review the record in its entirety and conclude that a reasonable factual basis does not exist for the finding and further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Benefield v. Sibley, 43,-317 (La.App.2d Cir.7/9/08), 988 So.2d 279, writs denied, 2008-2162, 2008-2210 (La.11/21/08), 996 So.2d 1107, 2008-2247 (La.11/21/08), 996 So.2d 1108; Coody, supra.
Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Hays, supra; Coody, supra. Where there are contradictory expert opinions, the appellate court is bound to give great deference to the conclusions of the trier of fact. Id.
In the instant case, with regard to the issue of whether there was a causal connection between the breach (the placement of the bone graft) and the resulting injury (Mrs. Bloxham’s complaints of numbness, burning 17sensation and pain) the trial and deposition testimony was as follows:
Mrs. Bloxham testified that she was not experiencing any numbness or burning in her jaw, chin or gums prior to the surgery. However, the symptoms began shortly after the surgery. This testimony was bolstered by Mr. Bloxham’s testimony regarding the progression of his wife’s dental symptoms.
Dr. Zuniga, who performed Mrs. Blox-ham’s first “corrective” surgery on August *1221 31, 2007, testified that during his procedure, he noticed that the mental nerve was “encased or compressed by the implant.” He also stated that he believed the impingement occurred over a period of time because either the implant migrated or Mrs. Bloxham’s jawbone atrophied. Dr. Zuniga stated, “At the time of the procedures, my understanding of her history and based on my clinical and surgical evaluation, I felt there was no relationship between the periodontist’s procedure and the compression neuropathy.” When questioned, he stated that it was possible that the procedure performed by Dr. An-zalone contributed to Mrs. Bloxham’s symptoms. However, he testified that the “possibility” did not change his surgical findings that the implant caused the nerve impingement. Thereafter, Dr. Zuniga characterized any conclusion that Dr. An-zalone’s procedure caused Mrs. Bloxham’s symptoms as mere “speculation because of the timing of thé onset of the symptoms.” He testified that he did not find any evidence that the bone graft caused Mrs. Bloxham’s symptoms.
Dr. Eric Geist also provided deposition testimony. He testified that the implant he inserted in 1986 had an average life expectancy of 12 years. He testified that Mrs. Bloxham “more than likely” had nerve compression 1 ¡¡from the implant, stating, “[I]t’s almost certain that a periosteal staying in that long, you would have some compression of the nerve from that, from that implant.” Thereafter, Dr. Geist testified that one could possibly assume that the procedure performed by Dr. Anzalone caused Mrs. Bloxham’s symptoms “given the time frame.” However, he further stated:
[J]ust based on the timing, I mean, you would have to extrapolate that it probably had something to do with the procedure. It could have been anything though, it doesn’t have to be compression, I mean, it could have been, you know, retraction. I seriously doubt he would literally cut the nerve, but you know, I don’t know, I mean, it’s speculation.
Ultimately, Dr. Geist testified that he did not know if Mrs. Bloxham’s symptoms were caused by the implant itself or by the procedure performed by Dr. Anzalone.
Dr. Thomas McNeely, a periodontist, also served as a member of the medical review panel in this case. He testified that he had no. opinion on the issue of causation. He stated that the. symptoms Mrs. Bloxham experienced can be related to “some type of nerve trauma or injury.” He explained that the nerve “could have been traumatized” either by the implant pressing on it or by “inflamm,ation in the surgery area prior to and postoperativ.ely.” Dr. McNeely further stated:
I’m going to speculate by saying with the inflammatory process that was going on that yielded the pain that she presented with to Dr. Anzalone, removing that inflammatory tissue, debriding it, creating a healthier healing environment, there’s going to be constriction of the soft tissues.
If what Dr. Zuniga described in his records [occurred], that there was a compression of the nerve when he evaluated it, it’s my speculation that just the healing process from debriding it and cleaning the wound out [ 9could have triggered the irreversible paresthesia, but this is certainly my guess.
Dr. David Kim, an oral and maxillofacial surgeon, also 'testified via deposition. He stated that he was a member of the medical review panel that reviewed this matter. Dr. Kim testified that there was no evidence that Mrs. Bloxham’s nerve was compressed prior- to the procedure performed by Dr. Anzalone; however, after the procedure, she began showing signs of nerve impingement. He stated that it was an *1222 “incredible coincidence that her symptoms started two weeks after [the] surgery for no reason whatsoever.” Despite the panel’s opinion to the contrary, Dr. Kim stated, “Based on my review of the medical record, the most likely cause of Ms. Blox-ham’s nerve injury was the surgery performed by Dr. Anzalone.” He stated that the “temporal relationship” of the symptoms to the surgery and the proximity of the nerve impingement and the surgery site suggest a causal relationship between the two events. He further explained:
[T]he location of the surgery would be perfectly reasonable to surmise that the possible injury to the nerve may have occurred from that procedure. If the surgery [was] done in a completely other part of her mouth, I could possibly understand there being no relation to that surgery and her resulting symptoms[.] [B]ut the location of the surgery that was performed[,] I feel[,] makes it a very likely candidate for the cause.
Dr. Kim admitted that he did not know if the nerve impingement was caused by the insertion of the bone graft itself or from the placement of a surgical instrument during the procedure.
Dr. Ghali Ghali, an oral maxillofacial surgeon, testified that he began treating Mrs. Bloxham in September 2009. He stated that her symptoms were “temporally related to when she had the procedure done by [Dr. | inAnzalone].”
After reviewing the testimony, the trial court found in favor of Dr. Anzalone. The court concluded that it was not convinced the bone graft in question caused or contributed to Mrs. Bloxham’s injury.
We have examined this record in its entirety. Although Dr. Kim opined that the procedure performed by Dr. An-zalone caused Mrs. Bloxham’s nerve impingement, the other experts, Drs. Zuniga, Geist and McNeely, attributed the nerve impingement to the old dental implant. We are bound to give great deference to the evidence of record and the trier of fact’s decision to credit the expert testimony of Drs. Geist, Zuniga and McNeely over the contradictory testimony of the other expert witness. Therefore, based upon this record, we cannot conclude that the trial court was clearly wrong in finding that plaintiff failed to meet her burden of proving, by a preponderance of the evidence, that the placement of the bone graft caused her injury.
This argument lacks merit.
Additionally, plaintiff contends the trial court erred in failing to apply the doctrine of res ipsa loquitur and the presumption of causation set forth in Housley v. Cerise, 579 So.2d 973 (La.1991). Plaintiff argues that Mrs. Bloxham was not experiencing numbness, pain or a burning sensation pri- or to her procedure; all of the symptoms began after Dr. Anzalone performed the bone graft.
Res ipsa loquitur is a rule of circumstantial evidence that applies when the facts suggest that the negligence of the defendant is the most plausible explanation for the injury. Harper v. Advantage Gaming Co., 38,837 (La.App.2d Cir.8/18/04), 880 So.2d 948; Martinez v. Schumpert Medical Center, 27,000 (La.App.2d Cir.5/10/95), 655 So.2d 649. This evidentiary doctrine is applicable when three requirements are met: 1) the circumstances of the accident are so unusual that, in the absence of other evidence, there is an inference of negligence by the defendant; 2) defendant had exclusive control over the thing causing injury; and 3) the only reasonable conclusion is that defendant’s breach of duty caused the accident. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992); Harper, supra. The doctrine allows an inference of negligence to arise from the common experience of the factfinder that such accidents normally do *1223 not occur in the absence of negligence. Additionally, the doctrine does not dispense with the rule that negligence must be proved. It simply gives the plaintiff the right to add to the case, “along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence” sufficient to shift the burden of proof. Montgomery v. Opelousas Gen. Hosp., 540 So.2d 312 (La.1989).
In Housley, supra, the Louisiana Supreme Court held that a claimant’s disability is presumed to have resulted from an accident if the injured person was in good health before the accident, the symptoms of the injury appeared and continually manifested themselves afterwards, and the medical evidence supported a reasonable possibility of a causal connection between the accident and the disabling condition.
In the present case, the trial court was presented with the testimony of multiple expert witnesses. The testimony showed various possible explanations for Mrs. Bloxham’s nerve impingement and subsequent 112symptoms. Consequently, the trial court could have concluded that the nerve impingement was caused by the procedure performed by Dr. Anzalone. On the other hand, the court could have concluded that the nerve impingement was caused by the old dental implant, negating any presumption of causation from Dr. Anzalone’s procedure. As stated above, we cannot say that the trial court’s conclusion, that plaintiff failed to meet the burden of proving that Dr. Anzalone’s procedure did cause Mrs. Bloxham’s problems, was clearly wrong. Likewise, in light of the expert testimony regarding other possible causes of Mrs. Bloxham’s symptoms, we cannot say that because Mrs. Bloxham began experiencing her symptoms after her procedure, plaintiff is automatically entitled to a presumption that her symptoms were caused by a breach in the standard of care by Dr. Anzalone and that her injuries would not have otherwise occurred.
This assignment lacks merit.
CONCLUSION
For the reasons set forth herein, the trial court’s judgment is hereby affirmed. Costs of this appeal are assessed to plaintiff, Gerald M. Bloxham.
AFFIRMED.

. Mrs. Bloxham died of unrelated causes shortly after the trial on the merits.

. The implant was not inserted into the jawbone; it was positioned on top of the jawbone.

.Dr. Anzalone saw Mrs. Bloxham on September 21, October 5 and October 24, 2006.