EDWIN A. LOMBARD, Judge.
| plaintiff, Margie Rosales (“Mrs. Rosales”), sued Defendant, Dr. James Loyola (“Dr. Loyola”) and his malpractice insurer, St. Paul Fire & Marine Insurance Company (“St. Paul”), alleging that Dr. Loyola’s negligent removal of her wisdom teeth, sometimes hereinafter referred to as “third molars,” either caused her to develop, or exacerbated an existing, temporo-mandibular joint (TMJ) disc displacement. Mrs. Rosales further alleged that Dr. Loyola did not obtain her informed consent to perform the surgery. After a bench trial, Dr. Loyola was found liable to Mrs. Rosales for damages in the amount of $45,000. Dr. Loyola and St. Paul appealed the trial court’s judgment. After a review of the record in light of the relevant law, we affirm.

Relevant Facts:

Mrs. Rosales was referred to Dr. Loyola, an oral surgeon, by her dentist, for the removal of tooth #32, her lower right wisdom tooth, which had been causing her pain. X-rays were taken at Dr. Loyola’s office on December 19, 1999 and Mrs. Rosales was informed that teeth numbers 1 (the upper right third molar), 17 (the lower left third molar), and 32 (the lower right third molar) were impacted and would have to be removed. On | ^December 30, 1999, Mrs. Rosales came to Dr. Loyola’s office for the extraction of the teeth. According to Dr. Loyola, prior to the procedure, he explained the risks associated with the procedure to Mrs. Rosales and a consent form was presented to Mrs. Rosales for her review and signature. Dr. Loyola claims he later performed the procedure, which he claims lasted thirty-five minutes, without complication.
Mrs. Rosales remembers the events surrounding the extraction much differently. She insists that Dr. Loyola never spoke to her about the details of the surgery nor informed her of the risk of developing or exacerbating a TMJ disc displacement, or any other condition, as a result of the extraction. She further insists that Dr. Loyola never presented her with a written consent form for her review and signature. She further denies ever giving her oral consent to the surgery and insists that she was never informed of any less-invasive alternative treatments or courses of action. Mrs. Rosales testified that the first time she ever met Dr. Loyola was when he walked in to perform the procedure. By her account, based upon the time she went into surgery and the time she came out, the surgery took two hours and thirteen minutes to complete. Mrs. Rosales’ broth *861 er, who accompanied her to the surgery, testified that Dr. Loyola came out to speak with him during the procedure and told him that a complication in the surgery was causing a delay.
Mrs. Rosales claims that she suffered immediate pain and pressure to her jaw upon Dr. Loyola placing the bite block in her mouth. Although she allegedly brought this to Dr. Loyola’s attention, she claims that he failed to reposition the bite block. According to Mrs. Rosales, immediately after the procedure, she began experiencing pain in her jaw and ringing in her ears. A |3few days later, her jaw began clicking when opening. Mrs. Rosales telephoned Dr. Loyola when she began to experience severe pain and nausea. In response, Dr. Loyola prescribed more pain medication.
Mrs. Rosales did not return for her scheduled follow-up procedure and did not seek further treatment from Dr. Loyola when her TMJ symptoms appeared. Eight months after the extraction, she sought treatment from other health care providers for TMJ dysfunction she alleges was initiated as a result of the extraction procedure performed by Dr. Loyola. Eventually, the clicking and popping in her jaw became so bothersome that Mrs. Rosales underwent surgery in an effort to relieve the TMJ dysfunction. Nevertheless, Mrs. Rosales claims that, to this day, she is still suffering from pain and discomfort as a result of the extraction.
Mrs. Rosales filed a complaint with the Louisiana Compensation Fund alleging medical negligence against Dr. Loyola. She specifically alleged that Dr. Loyola breached the standard of care by failing to discuss the risks associated with the extraction of her teeth, failing to present Mrs. Rosales with a written consent form, and failing to properly perform the extraction procedure. The medical review panel, which was composed of Drs. Louis Genard, Craig Brandner and Anthony Indovina, found that the evidence did not support the conclusion that Dr. Loyola failed to meet the standard of care as it related to the performance of the surgical procedure. However, the panel did find that a material issue of fact existed as it related to obtaining proper informed consent since Dr. Loyola was unable to produce the alleged written consent form for the panel’s review.
On December 10, 2001, Mrs. Rosales and her husband brought suit against Dr. Loyola and his insurer for medical malpractice. At trial, Mrs. 1 ¿Rosales alleged that her temporomandibular joint was hyper-extended by Dr. Loyola during the extraction of her lower, right wisdom tooth, resulting in an anterior disc displacement. She argued that a hyperextension injury to the TMJ and/or anterior disc displacement are material risks associated with a third molar extraction, therefore, such risks should have been disclosed to her by Dr. Loyola prior to the extraction. In the alternative, she alleged that her TMJ dysfunction pre-existed the extraction and was asymptomatic and that aggravation of a preexisting asymptomatic TMJ condition is a material risk that should have been disclosed by Dr. Loyola prior to the extraction.
After a bench trial, Dr. Loyola was found liable to Mrs. Rosales. In its reasons for judgment, the trial court stated that Dr. Loyola breached the standard of care by failing to obtain Mrs. Rosales’ informed consent. The court also found that Dr. Loyola breached the standard of care by failing to prepare an operative report, which would have documented what he did during the surgery. The trial court awarded Mrs. Rosales $45,000 in damages. Defendants then filed the instant appeal.

*862
Assignments of Error:

Defendants argue that the trial court abused its discretion in:
1. Finding that Dr. Loyola’s failure to prepare an operative report was a breach of the standard of care;
2. Finding that Dr. Loyola’s failure to present a written consent form to Mrs. Rosales was a breach of the standard of care; and
3. Failing to address causation between any act or omission on the part of Dr. Loyola and plaintiffs alleged damages.

Law and Analysis

Informed Consent

|RThe standard of review for factual determinations is one of manifest error. Brandt v. Engle, 00-3416 (La.06/29/01), 791 So.2d 614. Thus, for reversal, an appellate court must find that a reasonable factual basis does not exist for the finding and that the finding was clearly wrong. Id. In reviewing a 'fact finder’s determination that a doctor failed to obtain the patient’s informed consent, the appellate court should focus on the duty of the doctor to provide material information to the patient under the circumstances of the particular case, and view the evidence in the light most favorable to the party who prevailed before the trier-of-fact. Lugenbuhl v. Dowling, 96-1575 (La.10/10/97), 701 So.2d 447. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978).
Louisiana Revised Statute § 40:1299.131 sets out the requirements of informed consent by dentists and oral surgeons. According to this statute, the patient must be informed in general terms of the nature and purpose of the dental treatment and the possible associated risks, and must have an opportunity to ask questions regarding the procedure and have the questions answered in a satisfactory manner. La.Rev.Stat. 40:1299.131. The patient’s subsequent consent to the treatment may be verbal, provided that it meets the established criteria. See La.Rev.Stat. 40:1299.131(F).
In a case, such as this one, where the plaintiff alleges that she underwent a dental treatment without her informed consent, the plaintiff has the burden of proving: (1) The existence of a material risk unknown to the [fipatient; (2) The failure of the oral surgeon to disclose that risk; (3) That the disclosure of the risk would have led a reasonable patient in the plaintiffs position to reject the medical procedure or choose a different course of treatment; and (4) Injury. Hondroulis v. Schuhmacher, 553 So.2d 398, 404, n. 35 (La.1988). In a case where the plaintiff alleges there has been no consent, the law requires only proof of a material risk that was not disclosed and the occurrence of that risk. LaCaze v. Collier, 434 So.2d 1039,1040, n. 1 (La.6/17/83).
In this case, the oral surgeons who testified on behalf of Dr. Loyola stated that a hyperextension of the TMJ and/or anterior disc displacement is a very remote risk associated with a third molar extraction. Generally, a risk is material when a reasonable person in what the doctor knows or should know to be the patient’s position, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed therapy. Hondroulis, supra, at 411^12, citing, LaCaze v. Collier, supra, at 1045-46. A rare or unforeseeable risk *863 of medical treatment need not be disclosed to a patient unless a risk is medically known and of a magnitude that would be material in a reasonable patient’s decision to undergo treatment. Id., at 413.
In this case, Defendants have conceded that an aggravation of a preexisting, asymptomatic TMJ dysfunction, whereby that condition becomes symptomatic, is a material risk associated with a third molar extraction. Although the standard 1999 consent form customarily used by Dr. Loyola at the time of Mrs. Rosales’ surgery did list Trismus (jaw pain and difficulty opening the mouth) as a risk that could occur as a result of the extraction, Dr. Loyola claimed that the signed consent form was misplaced |7by his office staff and he could not locate it; hence, he did not produce the alleged signed consent form at the Medical Review Board hearing or at trial. As previously stated, Mrs. Rosales emphatically denies that Dr. Loyola ever presented her with a written consent form or discussed with her the risks and possible complications of the extraction and therefore, did not have her informed consent to perform the extraction.
In the absence of valid written consent, the patient claiming lack of informed consent must prove that a known risk of the procedure was not disclosed, that the undisclosed risk actually occurred, and that a reasonable patient would have withheld his consent if advised of the specific risk. Wright v. Hirsch, 572 So.2d 783, 788 (La.App. 4 Cir.1990). Although the patient has the absolute right, for whatever reason, to prevent unauthorized intrusions and treatments, he or she can only recover damages for those intrusions in which consent would have been reasonably withheld if the patient had been adequately informed. LaCaze, supra, at 1049.
Defendants argue that a reasonable person would not have withheld her consent for the removal of the molars just because there was a remote chance that TMJ could develop or worsen. They claim that Mrs. Rosales had to have her third molar # 32 removed due to its decayed state and the increasing and constant pain she was experiencing in the tooth, and that the only alternative to the extraction would have been to leave the rotten tooth in place, which could have been life-threatening if the infection had worsened. Defendants argue that, based on these facts, it is unlikely that a reasonable person experiencing severe and constant pain in her tooth would have refused to undergo the extraction having been informed of the material risk of a possible development or exacerbation of a pre-existing TMJ | ^dysfunction.
On the other hand, Mrs. Rosales argues that a reasonable person may have refused the extraction, had he or she been specifically advised of the material risk of exacerbating an existing non-symptomatic TMJ condition. Although molar #32 was infected, molars # 1 and # 17 were merely impacted, and were not causing Mrs. Rosales any pain or discomfort. She claims that, nevertheless, Dr. Loyola failed to advise her of any alternative courses of treatment. Mrs. Rosales argues that had she known of the risk of developing or exacerbating a TMJ dysfunction, she would have opted for an alternative course of treatment, such as taking antibiotics to treat the infection, had that option been presented to her before the surgery. The trial court clearly accepted and found reasonable Mrs. Rosales’ testimony that had she been told of the material risks of the procedure, she would not have undergone the extraction of the molars.
Dr. Loyola testified that Mrs. Rosales consented in writing to the procedure while Mrs. Rosales denies that she consented, either in writing or verbally. After hearing the testimony of both parties, the trial court found that Dr. Loyola did *864 not have Mrs. Rosales’ informed consent to perform the surgery. Apparently, the trial court found Mrs. Rosales’ testimony to be more credible than the unsupported self-serving testimony of Dr. Loyola that he discussed the treatment options and possible risks of the extraction with Mrs. Rosales. An appellate court may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Dawes v. Kinnett, 99-3158 (La. App. 4 Cir. 1/17/01), 779 So.2d 978, 984. |flHere, the trial court observed the witnesses, heard their testimony, weighed the evidence before it, and concluded that Dr. Loyola failed to inform Mrs. Rosales of the risks involved in undergoing the extraction of her third molars, that Mrs. Rosales did indeed develop or exacerbate a TMJ dysfunction, and that she would not have undergone the surgery had she known that the unknown risk could occur. Because there is factual support for the trial court’s findings in the record, we cannot say that the trial court’s finding that Dr. Loyola breached the standard of care by failing to obtain Mrs. Rosales’ informed consent was clearly wrong.

Medical Malpractice

The trial court also found that Dr. Loyola committed medical malpractice, negligently breaching the standard of care of an oral surgeon, by failing to prepare an operative report. To prove medical malpractice a plaintiff must prove the prevailing standard of care, the health care provider’s violation of that standard of care, and the causal connection between the health care provider’s alleged negligence and the plaintiffs claimed injuries. Pfiff-ner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228; La.Rev.Stat. 9:2794. The standard of care is generally that degree of knowledge or skill possessed or the degree of care ordinarily exercised by doctors licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances. La.Rev.Stat. 9:2794 A(l).
While much of the medical evidence on this issue was in Dr. Loyola’s favor, Mrs. Rosales also presented medical evidence that Dr. Loyola’s surgical technique fell below the standard of care and that this negligence resulted in either the development or exacerbation of an existing TMJ | ^dysfunction. Mrs. Rosales specifically testified that Dr. Loyola used excessive force in removing molar # 32, thereby hyper-extending the TMJ, resulting in an anterior disc displacement. Although Dr. Brandner and Dr. Indovina testified that they could not say that the technique employed by Dr. Loyola in the removal of Mrs. Rosales’ third molars was improper or that any action or inaction by Dr. Loyola caused or exacerbated Mrs. Rosales’ TMJ disc displacement, Dr. Indovina did testify that a bite-block should not hurt a patient’s jaw and it is possible that a bite-block can stretch a patient’s jaw beyond its normal range of motion. Dr. Indovina further testified that TMJ displacement is best prevented by allowing the patient to bite on a prop and rest every few minutes if the procedure is prolonged, because the longer the procedure, the more likely a problem will develop. Additionally, Mrs. Rosales’ treating physician, Dr. Pulliam, opined that Mrs. Rosales’ temporomandib-ular joint was hyper-extended by Dr. Loyola during the extraction of her lower, right wisdom tooth resulting in an anterior disc displacement. Further, Dr. Indovina testified that Mrs. Rosales’ MRI results were consistent with a finding of the hy-perextension of her mandible.
The trial court found that Dr. Loyola’s failure to prepare an operative report, in- *865 and-of-itself, breached the applicable standard of care. Dr. Loyola’s failure to prepare an operative report, which would have documented exactly what he did during the surgery, does make it difficult to determine whether his surgical performance met the standard of care or whether any of the actions taken by Dr. Loyola resulted in Mrs. Rosales’ injuries. However, there is medical evidence in the record to support the trial court’s finding that Mrs. Rosales’ temporomandibular joint was hyper-extended during the extraction and that she suffered injury to the joint as a Inresult. Keeping in mind the standard for appellate review of manifest error, after reviewing the evidence in the record, we find no error in the trial court’s finding regarding the negligence and fault of Dr. Loyola.
Accordingly, because the evidence produced at trial was enough to form a factual basis for the trial court’s finding that Dr. Loyola failed to obtain Mrs. Rosales’ informed consent to the extraction and that he breached the applicable standard of care, the judgment of the trial court is affirmed.
AFFIRMED.