MOORE, J.
11 Wanda Magee, in proper person, appeals a summary judgment that dismissed her dental malpractice claims arising from two procedures following a dental implant. She contends her periodontist, Dr. Charles Williams, did not obtain her informed consent for the followups. For the reasons expressed, we affirm.

Factual Background

Ms. Magee first came to Dr. Williams in 2008, with numerous abscesses. He extracted two molars and discussed that she might need three implants. She returned to him in January 2010, complaining that she could not eat and saying she wanted the implants. They discussed the procedure, and Dr. Williams took a CT scan to evaluate the bone for implant placement. On January 6, he gave her a treatment plan for three implants, mentioning she might need a bone graft. She signed the plan, admittedly without reading it, thus consenting to it. She underwent one implant on February 9, 2010.
Nine days later, February 18, she returned complaining of nausea and pain. Dr. Williams recommended “exposing” the implant to evaluate it better. He did not obtain her signed consent, but maintained that he orally advised her of the risks and benefits. Ms. Magee testified that she wanted to keep the implant and wanted him to fix “whatever was wrong.” He cut and found no dehiscence or infection, but removed a small amount of necrotic tissue. He ordered a CT scan, which showed the implant was still stable, and prescribed antibiotics. He told her to return in a week, but she did not do so until June 1, when she came in with an abscess in the implant area, 12which he drained.
Several weeks later, July 8, she returned, still complaining of serious pain. Dr. Williams again i’ecommended “exposing” the implant and possibly doing a bone graft, to promote healing. Again, he did not obtain her signed consent, but maintained that he discussed the risks and benefits and that she agreed. He performed a somewhat more elaborate incision, under local anesthesia, found a de-hiscence (separation of tissue along the incision), applied an allograft (transplant from a cadaver bone), covered the incision with a resorb membrane and sutured the area shut. He told her to return in a week.
Two days later, July 10, Ms. Magee went to the LSU emergency room com *267 plaining of a “throbbing” left jaw and “bone chiping [sic] in the mouth.”' The ER doctor gave her antibiotics and told her to return to her dentist.
Ms. Magee returned to Dr. Williams on July 13. He wrote in his notes that the surgical area looked “fine,” with no swelling or redness around the incision, and no suppuration (formation of pus), bone chipping or instability. Her face was swollen, however, and he advised her to take Perco-cet when she got home. This was Ms. Magee’s final visit to Dr. Williams.
Dissatisfied with her results, Ms. Magee went to another dentist, who referred her to Dr. William Borders, a periodontist. Dr. Borders examined her on November 10, finding the implant stable but slightly swollen. A week later he opened the area and found the implant “exposed” to the bone; he had to remove the implant and give her a small bone graft. He also | ¡¡discussed replacing the implant.

Procedural History

. Ms. Magee retained counsel and filed a medical review panel (“MRP”) complaint against Dr. Williams on February 7, 2011, alleging malpractice with respect to the implant procedure and lack of informed consent with respect to the two followup procedures. The MRP met in January 2013 and concluded that Dr. Williams did not breach the standard of care in any of his treatment and care of Ms. Magee. However, it found a question of fact as to whether she had given informed consent to the two followup procedures.
In April 2013, Ms. Magee filed the instant suit alleging that Dr. Williams performed the two followup procedures without her informed consent; breached the standard of care by improperly telling her she was a candidate for an implant, failing to perform a bone a graft before the implant, and generally failing to exercise appropriate care and skill; and that this conduct caused her damages.
Dr. Williams filed a motion for partial summary judgment, in effect to dismiss all claims arising from'the initial, implant procedure. In support, he offered (inter alia) the MRP opinion, .which had found no breach of the standard of care with respect to the implant. Ms.. Magee, filed no opposing evidence and, in October 2014, her counsel signed a consent judgment dismissing all claims with respect to the implant. The judgment reserved her claims of lack of informed consent for the two followups.
14Pr. Williams then filed the instant motion for summary judgment seeking to dismiss the informed consent claims. He showed that verbal consent is allowed, La. R.S. 40:1299.131 F (now redesignated as R.S. 40:1161.1 F), and argued that Ms. Magee gave valid, verbal .consent. In support, he attached a portion of her deposition, in which she stated that he -did not have her sign a consent before the followup procedures, but she described how badly she wanted to keep the implant and admitted that even if he had disclosed all the risks, “I probably would have went with it.” He also attached a portion of Dr. Borders’s deposition, in which he declined to state an opinion on her malpractice claims, adding that the complications she encountered could have “happened to anyone.”
In opposition, Ms. Magee offered her own affidavit, in which she asserted that the two followup procedures were done without her consent. She also, offered the MRP opinion, which had found a “question of fact” as to the followup procedures, and Dr. Borders’s affidavit, which described only the treatment he rendered to Ms. Magee.
After a hearing in June 2015, the district court granted Dr. Williams’s motion and *268 réndered summary judgment dismissing ail claims. Ms, Magee’s counsel moved to withdraw, on grounds that he had completed all.the legal services for which,he had been retained; the court granted this. .
Ms, Magee has appealed, in proper person, designating seven assignments of er-. ror.

IsDiscussion

At the outset, we note that Ms. Magee’s brief does not fully comply with URCA 2-12.4. It is repléte with “facts” that are not part of the appellate record, and this court cannot consider them. In re Succession of Scurria, 45,292 (La.App. 2 Cir. 8/25/10), 47 So.3d 620; Reed v. Peoples State Bank of Many, 36,531 (La.App. 2 Cir. 3/5/03), 839 So.2d 955. In the interest of justice this court will read pro se filings indulgently and attempt to discern the thrust of the appellant’s position on appeal and the relief she seeks. Greenwood Comty, Ctr. v. Calep, 48,737 (La.App. 2 Cir. 1/15/14), 132 So.3d 470; Graham v. McKinney Nissan, 39,656 (La.App. 2 Cir. 6/29/05), 907 So.2d 213. However, even with the latitude extended to a pro se litigant in the form of liberally construed pleadings, she is required to meet her burden of proof. Greenwood Cmty. Ctr. v. Calep, supra; Manichia v. Mahoney, 2010-0087 (La.App. 4 Cir. 8/4/10), 45 So.3d 618, writ denied, 2010-2259 (La.11/24/10), 50 So.3d 829.
By her first assignment of error, Ms. Magee urges she had a history of gum disease, so she was not a candidate for a bone graft and would not have consented to that procedure! By her second assignment, she urges that if there had been verbal consent, it would have been documented on her chart; since there was no documentation, there was no consent.
The remainder of the assignments of error raise issues unrelated to the' judgment, which was limited to the claims of lack of informed consent for the second and third procedures.[1] Appeal lies only from the .judgment | firendered. La. C.C.P. art. 2082. This court cannot consider claims in which the party, confessed or acquiesced in the judgment. La. C.C.P. art. 2085; Trahan v. Coca Cola Bottling Co. United Ltd., 2004-0100 (La.3/2/05), 894 So.2d 1096.
The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for trial. Schultz v. Guoth, 2010-0343 (La.1/19/11), 57 So.3d 1002, and citations therein. The motion shall be granted when the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The procedure is favored and shall be construed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966 A(2).
The burden of proof is on the party moving'for summary judgment. However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover is not required to negate all essential elements of the adverse party’s claim, action or defense, but rather to point out to the court the absence of factual support for one or-more such essential *269 element. Once the mover does this, the burden shifts to the adverse party to produce factual support sufficient to establish a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966 D(l); Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002. Appellate review of summary judgment is de novo. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880.
The plaintiff in a medical malpractice case has the burden of proving, by a preponderance of the evidence, the applicable standard of care, a deviation from that standard, and resultant damages, La. R.S. 9:2784 A; Johnson v. Morehouse Gen’l Hosp., 2010-0387 (La.5/10/11), 63 So.3d 87. In a claim of lack of informed consent, causation is. established only if adequate disclosure reasonably would be expected to have led a reasonable person to decline treatment because of the disclosure. Lugenbuhl v. Dowling, 96-1575 (La.10/10/97), 701 So.2d 447; Roberts v. Marx, 47,658 (La.App, 2 Cir. 1/16/13), 109 So.3d 462, writ denied, 2013-0649 (La.4/26/13), 112 So.3d 847.
Louisiana Informed Consent Law generally requires informed consent for medical treatment. La. R.S. 40:1157.1. Specifically, dentists must advise patients in general terms of the nature and purpose of the treatment or course of treatment and the risks associated with it, give the patient the opportunity to ask questions, and answer them satisfactorily. La. R.S. 40:1161.1 B. It is .not essential to the validity of any informed consent that the consent be obtained in writing. La. R.S. 40:1161.1 P; Rosales v. Loyola, 2007-0517 (La.App. 4 Cir. 12/12/07), 973 So.2d 858.
On de novo review, we find no genuine issue of material fact as to the essential element of causation. In deposition, Ms. Magee candidly admitted that after getting the implant, “I wanted the implant. I didn’t want to lose |sthe implant. * * ⅞ That’s why I was willing to get up there and let him, you know, do what he had to do to fix it.” Later, she was asked whether, if. Dr. Williams had sat her down, talked to her about it, shared the risks and benefits and answered her questions, she would have done anything different. She replied, “At that time, I probably would have went with that, just like he did with the implant. * * * I’m quite sure I would have respected his opinion and, you know, agreed to that, but that’s not what happened.” In short, this admission negates the essential element of causation, as it shows Ms. Magee would not have declined the treatment had adequate disclosure been made. Lugenbuhl v. Dowling, supra; Brandt v. Engle, 2000-3416 (La.6/29/01), 791 So.2d 614; Roberts v. Marx, supra. Without the essential element of causation, the claim fails.
This finding obviates the need to dwell on the rest of Ms. Magee’s arguments, but out of courtesy to the pro se litigant we will address them briefly. By her second assignment of error, she argues that even if Dr. Williams obtained verbal consent, he breached the standard of care by failing to document this in her chart. As noted, writing is not essential to a valid informed consent; verbal consent “shall be valid, effective and subject to proof according to the rules of evidence of ordinary cases.” La. R.S. '40:1161,1 P. There is no breach in failing to document, in writing, an act of consent that need not be in writing. This assignment lacks merit.
Though not designated as an assignment of error, Ms. Magee argues that she never had the opportunity to fully explain her deposition testimony. However, she filed an affidavit in opposition to the motion for summary | ¡(judgment; in this, she could have attempted to explain her testimony, *270 but she did not. On this record, the deposition testimony stands unrefuted.
She copiously refers to her expert periodontist, Dr. Borders, to show the standard of care and a model of a valid consent form. However, Dr. Borders’s affidavit addressed only the treatment he rendered to Ms. Magee, and in deposition he pointedly declined to state any view of her malpractice claims. Even if Dr. Borders could establish the standard of care, he offered nothing to create a genuine issue as to breach or causation.
Finally, she argues that the MRP “found that Dr. Williams did not get consent for two surgical procedures,” but the record refutes this. The MRP merely found a question of fact as to informed consent, and thus declined to state a medical opinion. This establishes only that a genuine issue existed on the record before the MRP. The suit, discovery and evidence on two motions for summary judgment have failed to create a genuine issue.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the plaintiff, Wanda Magee.
AFFIRMED.

. These include contentions that Dr. Williams (1) committed a criminal act by trying to collect $2,254 in fees for services unrelated to this case; (2) breached the standard of professionalism by saying that she "is a bit strange” and “wants drugs”; (3) breached the standard of care by prescribing a steroid that impaired her ability to fight infections; (4) violated HIPAA by taking over 30 days to return her chart; arid (5) violated HIPAA by discussing her case with third parties without her consent.