NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-323

LESLIE RENEE BOAGNI-ELSBURY

VERSUS

ERNEST RAY ELSBURY, IV

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20172013
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.

**AFFIRMED.**

**Leslie Renee Boagni**
**5042 North University Avenue**
**Carencro, LA   70520**
**(337) 224-0317**
**COUNSEL FOR PLAINTIFF/APPELLANT/CROSS-APPELLEE:**
     **In Proper Person**

**Jack Derrick Miller**
**Nicole B. Breaux**
**Matthew H. Long**
**415 North Parkerson Avenue**
**Crowley, LA   70527-1650**
**(337) 788-0768**
**COUNSEL FOR DEFENDANT/APPELLEE/CROSS-APPELLANT:**
     **Ernest Ray Elsbury, IV**

**PERRET, Judge.**

Appellant, Leslie Renee Boagni ("Ms. Boagni"), appeals the trial court's judgment dividing and classifying separate and community property between her and her former husband, Ernest Ray Elsbury ("Mr. Elsbury").

Mr. Elsbury answered the appeal, requesting the trial court judgment be amended to "award him one-half of the total of $23,119.59, or $11,559.79, representing his attorney's fees incurred between the date the petition for divorce was filed and the date of the judgment of divorce, and for costs in this matter."

For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY:**

Ms. Boagni and Mr. Elsbury were married on November 18, 2000. No children were born of the marriage. On April 6, 2017, Ms. Boagni filed a petition for divorce, and thereafter, on September 13, 2017, she filed a petition to partition community property in accordance with La.R.S. 9:2801, titled "Partition of community property and settlement of claims arising from matrimonial regimes and co-ownership of former community property." The parties were divorced by judgment signed on December 11, 2017.

On December 10, 2020, Ms. Boagni filed her detailed descriptive list that valued the community assets at $1,466,584.82 and included reimbursement claims in the amount of $161,690.58. On March 5, 2021, Mr. Elsbury filed a combined detailed descriptive list, signed on February 24, 2021, wherein he listed the parties' movable property, their community liabilities, and their reimbursement claims. Although Mr. Elsbury lists his attorney's fees through December 10, 2017, in the amount of $24,630.00, as a community liability on his detailed descriptive list, he did not seek reimbursement for these fees.

On March 22, 2022, Mr. Elsbury, through his attorney, Jack Miller, and Ms. Boagni, through her attorney at that time, Frank Barber, stipulated to the authenticity of documents and entered into evidence Exhibits E-1 through E-44. Although Exhibit E-1 contained the November 10, 2020 detailed descriptive list previously filed by Ms. Boagni, Exhibit E-2 contained an undated and unsigned combined detailed descriptive list on behalf of Mr. Elsbury. For the most part, Mr. Elsbury's unsigned and undated combined detailed descriptive was the same as his February 24, 2021 combined detailed descriptive list; however, it is worth noting that the detailed descriptive list entered into evidence on March 22, 2022, added Ms. Boagni's attorney's fees, through December 10, 2017, in the amount of "[a]pproximately $15,000.00" and reduced the amount of his attorney's fee, through December 10, 2017, from $24,630.00 to $23,119.59. Additionally, Mr. Elsbury's combined detailed descriptive list listed both of their attorney fees as community liabilities and neither he nor Ms. Boagni sought reimbursement of these attorney fees in their detailed descriptive lists.

The trial to partition the property was conducted on September 13, 2022, and on October 13, 2022.[1] On December 28, 2022, the trial judge issued a three-page judgment allocating assets and liabilities to each party and, after considering the parties' respective reimbursement claims, found Ms. Boagni owed Mr. Elsbury "an equalizing sum of $96,922.40."

Ms. Boagni now appeals this judgment. Mr. Elsbury answered the appeal, arguing the trial court committed legal error in failing to award "attorney fees incurred through the divorce, as per Civil Code articles 2357 and 2362.1, in the

---

[1] Present in court were Jack Miller, on behalf of Mr. Elsbury, and Jacob Fusilier, on behalf of Ms. Boagni.

amount of $11,559.79 (one half of the total: $23,119.59)." Mr. Elsbury argues that "until a judgment of divorce is signed, attorney's fees should be awarded to the party who has incurred those expenses as a reimbursement."

At the outset, we note that Ms. Boagni is appearing pro se in this matter and that her brief does not comply with Uniform Rules—Courts of Appeal, Rule 2–12.4(A)(9), as there are no citations to the record or authorities relied upon. Further, Rule 2–12.2(B) prohibits language in briefs that includes the use of "insulting, abusive, discourteous, or irrelevant matter or criticism of any person, . . . or any court, or judge or other officer thereof, or of any institution." In her appellate brief, Ms. Boagni makes unwarranted personal attacks on the trial judge[2] despite the fact that the trial judge gave Ms. Boagni several continuances and was extremely courteous and helpful to her throughout the proceedings. However, "[i]n the interest of justice this court will read pro se filings indulgently and attempt to discern the thrust of the appellant's position on appeal and the relief she seeks." *Magee v. Williams*, 50,726, p. 5 (La.App. 2 Cir. 6/22/16), 197 So.3d 265, 268.

**STANDARD OF REVIEW:**

"The trial court is vested with great discretion in effecting a fair partition of community property." *Arterburn v. Arterburn*, 15-22, p. 4 (La.App. 3 Cir. 10/7/15), 176 So.3d 1163, 1167. A trial court's determination "of what is community versus what is separate property are findings of fact." *Young v. Young*, 06-77, p. 3 (La.App. 3 Cir. 5/31/06), 931 So.2d 541, 544. It is well settled that "[a]

---

[2] Examples of the insulting language used in Ms. Boagni's appellate brief are as follows: (1) "Judge Hulin is clearly biased and out of line and her integrity to the law is pathetic[;]" (2) "Judge Laurie Hulin[']s] errors are all over the case[;]" (3) "these, I believe, are glaring, unethical and grievous errors made by Judge Laurie Hulin in this case[;]" and (4) "It is my contention that there have been egregious errors made by Judge Laurie Hulin throughout this entire case. I contend that they are a disgrace and that she has been compromised in several areas."

court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993). Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the factfinder is clearly wrong. *Id.*

**DISCUSSION:**

Although much of Ms. Boagni's brief is devoted to unfounded arguments about the trial judge rather than the law on community property partitions, Ms. Boagni complains that she had to provide medical records to substantiate her March 22, 2022 continuance, that the trial judge failed to accept documents or testimony on her behalf, and that stipulations were made on her behalf without her consent. As such, we will review the record and exhibits to determine whether the trial judge erred in partitioning the community property.

According to the record, on October 13, 2021, the trial judge set a trial date of March 22, 2022, for this community property partition. On March 21, 2022, Ms. Boagni's attorney at that time, Mr. Barber, filed a motion to continue the trial stating that Ms. Boagni "is suffering from a cardiac event" and that "[u]ndersigned counsel is attempting to obtain additional medical records to present to the court which will substantiate [Ms. Boagni's] inability to participate in the trial." In response to the motion to continue, Mr. Elsbury's counsel "strongly" objected to a continuance and stated, in pertinent part:

> Next month, this case will have been in existence for five years. Throughout these years we have had much difficulty with Ms. Boagni. She has retained at least six separate lawyers to represent her and her changes in counsel have resulted in numerous delays. Approximately two weeks ago we received word from her present attorney, Mr. Frank

4

Barber, Ms. Boagni was wanting to fire him and hire another attorney. This was after our second of three meetings with Commissioner Douget that were scheduled in an attempt to reach an agreement for some, if not all, of the assets, liabilities and reimbursements to place into an agreed-upon combined detailed descriptive list.

After the third meeting on March 16, we again received word from Mr. Barber that she was wanting to fire him and obtain new counsel. Mr. Ernest Elsbury, who was in my office with me preparing for trial, received a call from Ms. Boagni stating that she had been trying to contact your office because she wanted to obtain a new attorney.

. . . .

Much time and effort has been expended to put this ease in a posture for trial. We have prepared the combined detailed descriptive list, Ms. Boagni has not. We have provided pretrial memorandums, Ms. Boagni has not. Mr. Elsbury, to the benefit of his former wife, has even spent the time to determine the amount of her reimbursements for principal payments paid on Mr. Elsbury's home and calculated dividends and interest earned from his separate IRA's. To be clear, this is not to say that Mr. Barber has been derelict in his duties, the combined detailed descriptive list, memorandums, and evidence in this case is incontrovertible. It is time to end this case.

The parties, including Ms. Boagni, appeared in court on March 22, 2022, and were able to have a pretrial conference and enter stipulations to the authenticity of Exhibits E-1 through E-44; however, the hearing was recessed and reset by the court, on its own motion, due to the courthouse's closure because of the inclement weather. On that same date, the trial judge reset the matter for May 2, 2022, and granted Mr. Barber's motion to withdraw as counsel of record for Ms. Boagni.

On April 22, 2022, Ms. Boagni filed another motion to continue trial, which the trial judge granted on April 29, 2022, stating: "Pursuant to a pretrial conference with all parties, and over the objection of counsel for Ernest Ray Elsbury, IV, the court grants the continuance and resets the matter to the 13th day of September, 2022, at 9:00 am."

5

On August 11, 2022, Ms. Boagni's newly retained counsel, Jacob Fusilier, filed a motion to enroll as counsel of record and to reset the hearing scheduled for September 13, 2022. On August 23, 2022, the trial court ordered Mr. Fusilier be enrolled as counsel of record for Ms. Boagni and ordered Mr. Fusilier to initiate a teleconference between all counsel and the court on August 30, 2022, at 2:30 pm.

On the morning of trial, Mr. Fusilier urged the court, once again, to continue the matter in order "to give [him] a little bit more time to prepare." In response, the trial judge referenced the March 22, 2022 transcript and the May 2, 2022 court minutes, in support of her decision to take Ms. Boagni's testimony on September 13, 2022, but to recess the matter until October 13, 2022, in order to give Mr. Fusilier additional time to prepare. Specifically, the September 13, 2022 transcript provides, in pertinent part:

> YOUR HONOR: All right. So March 22nd -- I wanted to take a look at that and make sure my memory was correct. Ms. Boagni was present with Court -- with counsel, Mr. [Frank] Barber, at the time. There were stipulations to the authenticity of --
>
> . . . .
>
> YOUR HONOR: All right. So at that time Mr. Barber stipulated to the authenticity of documents. So that they would not have to incur the expense of having to issue subpoenas to medical records custodians to get the documents, . . . judicial economy. There was Mr. Barber's comment there.
>
> The Court received into evidence Exhibits E-1 through E-44. At that time, Mr. Barber made clear for the record that Ms. Boagni also requested that that was not all the evidence that may be introduced at trial and it was for the limited purpose of authenticity and did not go to the weight or the exclusion of anything else. There was a combined detailed descriptive list.
>
> Yes, on March 22nd, due to the increment [sic] weather, the courthouse will be closing at 10:00 today. But there was also a motion to continue the trial filed on behalf of Ms. Boagni, because she was having medical issues at that time. There was some discussion about her health.

Then, there were discussions about Ms. Boagni proceeding with Mr. Barber as her attorney, because I believe she attempted to fire . . . Mr. Barber prior -- just prior to the trial date. And Mr. Barber, out of abundance of caution, appeared on her behalf, because a formal motion to withdraw had not been prepared.

. . . .

The Court inquired, "Well, that's what I need to know. Once I start the trial, then more than likely I will not allow him to withdraw. So once I start the trial, I need to know if you're going to represent yourself or there will be another attorney stepping into his shoes."

Ms. Boagni indicated, yes, that is correct, which I asked, "Which one? Either you're going to represent yourself or there will be another attorney stepping into his shoes." [Ms. Boagni responded] "There will -- there will hopefully be another attorney involved. But if not, I will represent myself."

So the Court, "Due to Ms. Boagni's health and the [inclement] weather, I will reset this matter, because we can't obviously get much time in twenty-five minutes anyway." So the Court reset the matter, due to the concerns of Ms. Boagni's health as well as the inclement weather and the courthouse closing at 10:00 on that date.

At that time, I informed Ms. Boagni, "It is up to you. You have to make up your mind. Either you know you get to hire your counsel of choice. However, you cannot continue to delay the Court. This matter needs to be resolved.["]

"And I agree with Mr. Miller. Every time that you change counsel, the opposing party continues to incurs [sic] additional costs. We keep having to push these proceedings back because, every time you hire a new attorney, they have to get re-acclimated . . . . They have to get acclimated to the case and they have to do their due diligence.["]

"So you either proceed with Mr. Barber, you represent yourself, or you come back with an attorney, ready to proceed. What date do y'all want? We can come in April."

. . . .

And at that time, we scheduled it to May 2nd. What happened on May 2nd?

MINUTE CLERK: I think an order to continue was filed on April 29th [by Ms. Boagni]?

7

. . . .

YOUR HONOR: -- to give [Ms. Boagni] an opportunity to hire an attorney.

. . . .

MINUTE CLERK: [Reading from the May 2, 2022 court minutes] Pursuant to a pretrial conference with all parties and over the objection of counsel for Ernest Ray Elsbury, IV, the Court grants the continuance and resets the matter to the 13th day of September, at 9:00 a.m.

YOUR HONOR: Okay. So that would have been, at the time that we had a pretrial conference with you as a pro-se party, to give you an opportunity to hire an attorney.

At this point I don't know what to do, because I keep telling you no more continuances. But then I get a poor attorney here who is trying to do his due diligence, represent your best interest, who can't go forward because he just got the file -- how long?

MR. FUSILIER: She officially retained me on or around August -- very early August, like the 6th or the 8th, in that area.

. . . .

YOUR HONOR: Did you have an opportunity to review the exhibits that were agreed to, as far as authenticity, and introduced into evidence by Mr. Barber and Mr. Miller back on the March [22] date?

MR. FUSILIER: I would say a cursory review, not in any depth.

YOUR HONOR: All right. So the Court did have a pretrial with both counsel. And out of professional courtesy to Mr. Fusilier, the Court did express that it was willing to reset at 11:00, so that he could do and attend to his matters as magistrate, that I would not require him to continue the entire court for this proceeding.

I would like to be able to at least start this matter. I don't see us finishing. It is already 10:12. I don't see us finishing, but I would like to get something started. And once we start trial, I am not going to allow him to withdraw.

So let's get started, and then I will continue the case so that you can attend your matters as magistrate. And then we will hear the rest of it at a later date, upon a date that both of you can be present or all four of you can be present.

8

After reviewing the record and transcripts, we find no merit to Ms. Boagni's complaints regarding the continuances, the stipulations, and the submitted evidence. Although Ms. Boagni argues that she was "required to procure [her] entire medical history and the result was that the postponement was not allowed by Judge Hulin[,]" we see nothing in the record to support this allegation. Rather, it was Mr. Barber (Ms. Boagni's attorney), who stated in his March 21, 2022 motion to continue the March 22, 2022 trial date, that he was "attempting to obtain additional medical records to present to the court which will substantiate [Ms. Boagni's] inability to participate in the trial." Additionally, Ms. Boagni was represented by Mr. Barber on March 22, 2022, when Exhibits E-1 through E-44 were agreed to and introduced into evidence, and was also represented by Mr. Fusilier on September 13, 2022, when Exhibits E-45 and E-46 were entered into the record, without objection.

The only testimony presented at trial came from Ms. Boagni and Mr. Elsbury. On March 22, 2022, the parties stipulated, without objection, to Exhibits 1 through 44. On September 13, 2022, Mr. Elsbury introduced Exhibit 45, evidencing his separate funds deposited to the community account, and Exhibit 46, evidencing a rollover Merrill Lynch to Wells Fargo account. However, Ms. Boagni failed to submit any exhibits on September 13, 2022, or on October 13, 2022. In consideration of the trial testimony and Exhibits 1 through 46, the court rendered the following judgment:

**IT IS ORDERED, ADJUDGED AND DECREED** that this Court finds that the following assets [are] allocated to each of the parties:

Assets in Ms. Boagni's Possession

1) 2011 Audi:                              $200.00

| 2) | Accordia Life and Annuity Company: | Unknown |
|---|---|---|

| 3) | Checking/Financial account in her name: | Unknown |
|---|---|---|

4)      Patent Claim:  This is a contingent asset.  Notice should be provided 10 days after any settlement/award and the proceeds should be equally divided.

| **Total Assets in the Possession of Ms. Boagni** | **$200.00** |
|---|---|

Assets in Mr. Elsbury's Possession

| 1) | Chase checking account, number 8692: | $19,360.24 |
|---|---|---|

| 2) | Chase checking account, number 9405: | $1,586.66 |
|---|---|---|

| 3) | Access of Louisiana Federal Credit Union: | $411.34 |
|---|---|---|

| 4) | A.F. Industries funds: | $204,940.43 |
|---|---|---|

| **Total Assets in the Possession of Mr. Elsbury**: | $226,298.67 |
|---|---|

**IT IS ORDERED, ADJUDGED AND DECREED** that this Court finds based on the evidence and testimony submitted at trial, liabilities of the community have been paid by Mr. Elsbury and are placed in the reimbursement section.

**IT IS ORDERED, ADJUDGED AND DECREED** that the reimbursements of the parties are as follows:

**Reimbursement to Ms. Boagni:**

1)      One-half of the principal payments related to Mr. Elsbury's separate home in the amount of $15,079.05

2)      One-half of the dividends and interest relative to Mr. Elsbury's separate investments in the amount of $75,655.89.

3)      One-half of the escrow payments on Mr. Elsbury's [s]eparate home in the amount of $20,229.16.

Total of Ms. Boagni's reimbursement claims are $110,964,10.

**Reimbursement to Mr. Elsbury:**

1)      One-half of the funds withdrawn from the IRA of Mr. Elsbury in the amount of $214,915.00[.]

2)     One-half of the funds withdrawn from Mr. Elsbury's PCS and Olin pension accounts in the amount of $13,872.50 and $7,264.

3)     One-half of Mr. Elsbury's inheritance in the amount of $11,158.73.

4)     One-half of the gift from Mr. Elsbury's mother in the amount of $7,500,00.

5)     One-half of the funds received as a result of the sale of Mr. Elsbury's separate home in the amount of $7,649.50.

6)     One-half of . . . Mr. Elsbury's social security benefits, in the amount of $15,742.50.

7)     One-half of the Whitney bank loan paid by Mr. Elsbury in the amount of $19,127.00.

8)     One-half of the C[h]ase credit card in the amount: of $2,301.50.

9)     One-half of the Discover credit card in the amount of $3,447.00.

10)     One-half of Ms. Boagni's separate student loan debt in the amount of $17,958.00[.]

Total of Mr. Elsbury's claims are $320,953.73[.]

Based on the foregoing reimbursements, Mr. Elsbury owes Ms. Boagni $110,964.10 and Ms. Boagni owes Mr. Elsbury $320,953.73. This makes the net balance of reimbursements calculated to be Ms. Boagni owing Mr. Elsbury $209,971,73[.]

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that after allocating the assets and liabilities to each of the parities [sic], and after considering each of the parties' respective reimbursement claims, the net effect is that . . . **LESLIE RENEE BOAGNI-ELSBURY** owes **ERNEST RAY ELSBURY IV** an equalizing sum of $96,922.40.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that **LESLIE RENEE BOAGNI-ELSBURY** shall pay 50% of the court costs and **ERNEST RAY ELSBURY IV** shall pay 50% of the court costs of this proceeding; and that each party is responsible for their own attorney's fees.

Ms. Boagni complains that "[t]he reimbursement section of Judge Hulin's Judgment is not complete in that [she] was not allowed to put in anything to do

11

with the monies [she] put into this marriage." However, the trial judge provided written reasons for her judgment, which stated, in pertinent part:

> Ms. Boagni made a claim for housing the dog at a cost of $8,500.00 and improvements made to Mr. Elsbury's separate home for landscaping, painting, patio deck, patio decking cover at an approximate amount of $50,000.00. During the trial of the matter, no evidence was submitted to this Court to substantiate these amounts; therefore, the Court cannot award reimbursements for this claim.

> Therefore, the total amount of reimbursement claims that Mr. Elsbury owes Ms. Boagni is $110,964.10.

After a review of the exhibits and testimony, we find no error in the trial court's ruling that partitions the community property. Accordingly, we affirm the judgment in its entirety.

## MR. ELSBURY'S ANSWER TO APPEAL:

In his answer to appeal, Mr. Elsbury argues that "[t]he trial judge committed manifest error in failing to award [him] attorney[']s fees as a reimbursement as per Civil Code articles 2357 and 2362.1." Mr. Elsbury alleges that "[t]he total amount of attorney's fees prior to divorce is $23,119.59" and that he should have been awarded $11,559.79, which is one-half of that amount, because "[h]is entire billings were undisputed, not attacked and were introduced into evidence, without objection."

Louisiana Civil Code Article 2357 provides, as follows:

> An obligation incurred by a spouse before or during the community property regime may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation. The same rule applies to an obligation for attorney's fees and costs in an action for divorce incurred by a spouse between the date the petition for divorce was filed and the date of the judgment of divorce that terminates the community regime.

12

Louisiana Civil Code article 2365 provides that a spouse is entitled to reimbursement for one half of the amount when his or her separate property is used to satisfy a community obligation. Additionally, La.Civ.Code art. 2362.1(A) provides: "An obligation incurred before the date of a judgment of divorce for attorney fees and costs in an action for divorce and in incidental actions is deemed to be a community obligation."

After reviewing Mr. Elsbury's February 24, 2021 combined detailed descriptive list, his unsigned and undated combined detailed descriptive list entered into evidence on March 22, 2022, and the trial transcript, we find that Mr. Elsbury failed to make any claim for reimbursement of his attorney fees following the trial court's judgment of divorce on December 11, 2017. Although Mr. Elsbury submitted Exhibit E-20, which includes his attorney fees through December 10, 2017, and testified at trial that the attorney fees amounted to $23,119.59, he failed to place any claim for reimbursement at issue for the trial court to consider. Moreover, the combined detailed descriptive list entered into evidence on March 22, 2022, also listed Ms. Boagni's attorney fees, in the amount of "[a]pproximately $15,000.00[,]" as a community liability. Because Mr. Elsbury's reimbursement claim was not properly before the trial court, we find no merit to his answer to this appeal seeking to amend the judgment to award him $11,559.79, as a reimbursement, for his attorney fees incurred between the date the petition for divorce was filed and the date of the judgment of divorce.

**DECREE:**

For the reasons set forth herein, the judgment of the trial court partitioning the property of the former community of acquets and gains of Ms. Boagni and Mr.

13

Elsbury is affirmed in its entirety. Costs of this appeal are split equally between Ms. Boagni and Mr. Elsbury.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.